**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 09-20865-CIV-HURLEY/HOPKINS**

**JONATHAN E. PEARLMAN,**

      **Plaintiff,**

**v.**

**GABRIELLE ALEXIS, et al.,**

      **Defendants.**

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'**
**MOTION  TO DISMISS OR FOR MORE DEFINITE STATEMENT**

**THIS CAUSE** comes before the court upon the defendants' motion to dismiss or, in the alternative, for more definite statement [DE # 9].  For the reasons given below, the court will grant in part and deny in part the defendants' motion.

**BACKGROUND**

This case was filed by Jonathan E. Perlman, the court-appointed Receiver in another case now pending before the undersigned, an enforcement action initiated by the Securities and Exchange Commission.   *See SEC v. Creative Capital Consortium, LLC*, Case No. 08-81565-CIV-HURLEY/HOPKINS.  The receivership established in that related case includes the following entities, each of which is alleged to have been controlled by George Theodule: Creative Capital Consortium, LLC; A Creative Capital Concept$, LLC; United Investment Club, LLC; and Reverse Auto Loan, LLC (collectively, the "Receivership Entities").  *See* Case No. 08-81565, DE # 8, 14. The order establishing the receivership specifically authorizes the Receiver to initiate litigation on behalf of the Receivership Entities in order to preserve and maintain their assets for the benefit of investors and creditors.  *See* Case No. 08-81565, DE # 8 ¶ 2.

The Receiver's amended complaint in this case alleges that between March 2008 and November 2008 defendant attorney Gabrielle Alexis, through her law firm, defendant Law Offices of Gabrielle Alexis, P.A. (GAPA), received approximately $6.8 million in fraudulent transfers from the Receivership Entities, some of which were her clients. *See* Am. Compl. ¶ 48. The fraudulent transfers are alleged to consist of $6.147 million transferred to an Options Express account jointly owned by Theodule and Alexis, all of which was allegedly lost in speculative investments, as well as various retainer payments made to GAPA and payments made to defendant Mondesir Alexis Title Services, Inc. ("Alexis Title"), the latter totaling approximately $722,000. *See* Am. Compl. ¶ 66-71, Ex. 1. The amended complaint further describes a real estate transaction in which Alexis and GAPA represented an entity (Dolce Regency Suites, LLC) even though that the entity was itself 50% owned by Alexis/GAPA's primary client, Creative Capital Consortium, LLC, and as a result of which the interests in Dolce properly belonging to Creative Capital were transferred to Theodule personally. *See* Am. Compl. ¶ 50-65.

Based on these allegations, the Receiver asserts claims to avoid and recover fraudulent transfers pursuant to Florida's Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101 *et seq*.; for unjust enrichment and imposition of a constructive trust/equitable lien; and for conversion, legal malpractice, breach of fiduciary duty, and aiding and abetting a breach of fiduciary duty. The defendants filed the instant motion to dismiss on June 22, 2009.

### JURISDICTION

The court has subject-matter jurisdiction over the state-law claims asserted in the amended complaint pursuant to 28 U.S.C. § 1367 because they are ancillary to the SEC enforcement action brought in Case No. 08-81565, over which this court has jurisdiction pursuant to 28 U.S.C. § 1331.

2

*See Peacock v. Thomas*, 516 U.S. 349, 356 (1996); *Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008).

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because all of the defendants reside in Florida and at least one defendant, Gabrielle Alexis, resides in the Southern District of Florida.

DISCUSSION

### A.    *Standard on Motion to Dismiss*

Granting a motion to dismiss is appropriate when a complaint contains simply "a formulaic recitation of the elements of a cause of action." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss, a complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence" in support of the claim and that plausibly suggest relief is appropriate. *Id.* On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986). Mere conclusory allegations, however, are not entitled to be assumed as true upon a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted. *See Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir. 1985). Regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law. *See Marshall County Bd. Of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).

3

**B.**     *Defendants' Motion to Dismiss*

  *1.*     *In Pari Delicto*

The defendants first argue that each of the claims asserted in the Receivers amended complaint is barred by the doctrine of *in pari delicto*.

"The equitable defense of *in pari delicto*, which literally means 'in equal fault,' is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." *Pinter v. Dahl*, 486 U.S. 622, 632 (1988); *see Official Cmte. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006) ("The doctrine of *in pari delicto* is an equitable doctrine that states 'a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.'") (quoting Black's Law Dictionary 794 (7th ed. 1999)). In securities litigation, the defense is properly invoked only where: (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress; and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310-11 (1985). The Supreme Court has observed that the *in pari delicto* defense "rarely has succeeded on the facts of any particular case." *Pinter*, 486 U.S. at 635 n.12.

The defendants in this case argue that the Receivership Entities themselves participated substantially in the wrongful conduct alleged in the amended complaint. Thus, they claim that *in pari delicto* bars the Receivership Entities from asserting claims related to that conduct through the Receiver. *See O'Halloran v. First United Nat'l Bank of Florida*, 350 F.3d 1197, 1203 (11th Cir. 2003) (prohibiting an entity in receivership from recovering for torts committed in the course of a Ponzi scheme in which it was "one of the principal culprits").

4

On a motion to dismiss, the court is generally limited to considering the allegations in the operative complaint, which are assumed to be true in ruling on the motion. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  Because *in pari delicto* is an affirmative defense requiring proof of facts asserted by the defendant, it is usually not an appropriate ground for a Rule 12(b)(6) dismissal.  *See Knauer v. Jonathon Roberts Financial Group, Inc.*, 348 F.3d 230, 237 n.6 (7th Cir. 2003) (noting that "*in pari delicto* is an affirmative defense and generally dependent on the facts, and so often not an appropriate basis for dismissal").  An *in pari delicto* defense may be successfully asserted at the pleading stage only where "the facts establishing the defense are: (1) definitively ascertainable from the complaint and other allowable sources of information, and (2) suffice [sic] to establish the affirmative defense with certitude."  *Gray v. Evercore Restructuring, LLC*, 544 F.3d 320, 325 (1st Cir. 2008).

Those requirements are not met here.  Although the amended complaint includes a brief overview of the scheme alleged in Case No. 08-81565, which the SEC asserts was accomplished by Theodule mainly through the Receivership Entities, naturally its allegations are for the most part directed at the defendants in this case – Alexis, GAPA, and Alexis Title.  Even to the extent that the amended complaint alleges wrongdoing by the Receivership Entities, an essentially equitable and necessarily factbound apportionment of responsibility between them and the defendants in this case would be an inappropriate exercise for a court ruling on a motion to dismiss.  The Receiver and the defendants also dispute specific doctrinally relevant facts, such as whether there were other, innocent managers of the Receivership Entities that could prevent Theodule's alleged conduct from being imputed to the Receivership Entities for purposes of the *in pari delicto* bar.  *See Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1355 (11th Cir. 2008) (observing that

5

whether the actions of corporate employees should be imputed to the corporation for purposes of the *in pari delicto* defense is a question typically reserved for the jury); *Bank of China, New York Branch v. NBM, LLC*, 359 F.3d 171, 179 (2d Cir. 2004); *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So.2d 1039 (Fla. 2d DCA 2007).[1] The *in pari delicto* defense is thus premature at this stage of the litigation, and the motion to dismiss on that ground must be denied.

Even were it not premature, the defense would likely be unavailing. While the defense has been asserted effectively against trustees, it usually does not apply in cases involving court-appointed receivers. *See Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995); *see also FDIC v. O'Melveny v. Myers*, 61 F.3d 17 (9th Cir. 1995); *Hannover Corp. of Am. v. Beckner*, 211 B.R. 849 (M.D. La. 1997). In *Scholes,* the Seventh Circuit rejected the notion that a receiver could stand *in pari delicto* with the defendants. 56 F.3d at 754. The court reasoned that the appointment of a receiver displaces the managers who had engaged in the wrongful conduct, and thus ensures that any recovery would go to the receiver and ultimately the innocent creditors, rather than the wrongdoers. *Scholes*, 56 F.3d at 754-55; *see also Freeman v. Dean Witter Reynolds, Inc.*, 865 So.2d 543, 550 (Fla. 2d DCA 2003) (noting that "a receiver does not always inherit the sins of his predecessors."). In other words, "the defense of *in pari delicto* loses its sting when the person who is *in peri delicto* is eliminated." *Scholes*, 56 F.3d at 754-55. If the defendants reassert the *in pari delicto* defense at a subsequent stage in this litigation, they must persuade the court that the defense should apply even though the alleged wrongdoers have been removed from the Receivership Entities.

> 2.    *Standing Under Florida's Uniform Fraudulent Transfer Act*

---

[1] State law governs the imputation of knowledge to corporations in these circumstances. *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 84-85 (1994).

The defendants contend that the Receiver lacks standing to sue for alleged fraudulent transfers under the Florida Uniform Fraudulent Transfer Act ("FUFTA"). FUFTA was adopted to prevent an insolvent debtor from transferring assets away from creditors when the debtor's intent is to hinder, delay, or defraud any of its creditors. *See* Fla. Stat. § 726.105(1). To establish a cause of action, the plaintiff must allege 1) there was a creditor sought to be defrauded, 2) a debtor intending fraud, and 3) a conveyance of property which could have been available to satisfy the debt. *Nationsbank, N.A. v. Coastal Utils. Inc.*, 814 So.2d 1227, 1229 (Fla. 4th DCA 2002).

The Florida Supreme Court has held that FUFTA provides a remedy only to creditors pursuing a claim against debtors for transferring funds to thwart the creditors' attachment. *See Friedman v. Heart institute of Port St. Lucie*, 863 So.2d 189, 191-92 (Fla. 2003); Fla. Stat. § 726.105(1). A creditor is defined as one who possess a claim under FUFTA, and a claim is a right to payment, whether or not it is reduced to judgment. *Friendman*, 863 So.2d at 191.

An equity receiver may not pursue fraudulent-transfer claims owned by the creditors of the receivership entities, for "[a]lthough a receivership is typically created to protect the rights of creditors, the receiver is not the class representative for creditors and receives no general assignment of rights from the creditors." *See Freeman v. Dean Witter Reynolds, Inc.,* 865 So.2d 543, 550 (Fla. 2d DCA 2003). Thus, the receiver may only pursue such claims on behalf of only the receivership entities that qualify as creditors. *Id.*

Here, the Receiver does not argue that Creative Capital, one of the four Receivership Entities and the entity that allegedly made the fraudulent transfers at issue, is a creditor. Rather, the Receiver posits that "since the remaining three Receivership Entities had invested in Creative Capital . . . they are therefore creditors of Creative Capital." This assertion, however, is found nowhere in the

7

complaint.  The complaint fails to allege that any of the Receivership Entities are creditors of the transferor and to identify what entity or entities the receiver is suing on behalf of.  Without factual allegations concerning the creditor-debtor relationship and other substantive requirements that must be pled to state a valid fraudulent-transfer claim, the court cannot assess whether the Receivership Entities are indeed creditors of the transferor.  Therefore, the court will dismiss the FUFTA claim without prejudice, giving the Receiver leave to file an amended complaint.

### 3.    Aiding and Abetting Breach of Fiduciary Duty

The defendants next argue that no cause of action for aiding and abetting a breach of fiduciary duty exists in Florida.  That argument is erroneous.  Florida law does recognize the tort of aiding and abetting a breach of fiduciary duty.  The elements are 1) a fiduciary duty on the part of the wrongdoer; 2) a breach of fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the wrongdoing. *In re Caribbean K Line, Ltd.*, 288 B.R. 908 (S.D. Fla. 2002) (applying Florida law); In re Meridian Asset Mgmt., Inc., 296 B.R. 243 (Bankr. N.D. Fla. 2003) (applying Florida Law).

### 4.    Heightened Pleading Standard

The defendants contend that the complaint fails to plead fraud with specificity, as required by Fed. R. Civ. P. 9(b).  Rule 9(b) provides, in relevant part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  To comply with Rule 9(b)'s heightened pleading standard, the plaintiff must plead the who, what, when, where and how of the alleged fraud.  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230 (11th Cir. 2008).

A fraudulent transfer claim, however, is different than the fraud claims to which Rule 9(a) would normally apply.  In a common-law fraud claim, the defendant is alleged to have made false

statements or material omissions to the plaintiff, who is in a position to plead those statements or omissions with specificity. *See Steinberg v. A. Analyst ltd.*, 2009 WL 806780, *12 (S.D. Fla. Mar. 26, 2009). A fraudulent-transfer claim, by contrast, involves a third-party defendant who has no relationship with the plaintiff, and thus the plaintiff usually has insufficient information to plead its claim with specificity. *Id.* As a result, Rule 9(b)'s heightened pleading standard does not apply to claims brought under Florida's Uniform Fraudulent Transfer Act. *Id.*; *see also Gulf Coast Produce, Inc. v. American Growers, Inc.*, 2008 WL 660100, *6 (S.D. Fla. Mar. 7, 2008); *Wing v. Horn*, 2009 WL 2843342, *3-4 (D. Utah Aug. 28, 2009) (applying Utah's fraudulent transfer act); *Nesco, Inc. v. Cisco*, 2005 WL 2493353, *3 (S.D. Ga. Oct. 7, 2005) (applying Georgia's fraudulent transfer act).

Even if the court were to conclude that the fraudulent-transfer claim must be pled with specificity, the Receiver's complaint would satisfy that requirement, because the Receiver has notified the defendants of their alleged role in the fraudulent transfers. *See Curtis Investment Co. v. Bayerische Hypo-Und Vereinsbank, AG*, 2009 WL 2391409, *5 (11th Cir. Aug. 5, 2009). The Receiver's complaint provides a brief history of the alleged Ponzi scheme, and alleges the exact dates on which the allegedly false transfers occurred, the amount of money involved in each transfer, the account to which the money was transferred, and which defendant was involved in each transfer. According, the Receiver has satisfied both the notice and heightened pleading requirements of the Federal Rules of Civil Procedure.

### 5. Attorneys' Fees

Finally, the defendants contend that there is no basis on which the Receiver could recover attorneys fees for the claims in Count IV (Aiding and Abetting and/or Breach of Fiduciary Duty), Count V (Conversion), and Count VI (Professional Malpractice). The Receiver's response does not

address this argument.

Under Florida law, the prevailing litigant is not entitled to recover attorneys' fees from the losing litigant absent a statute or contract providing otherwise. *See Price v. Tyler*, 890 So.2d 246, 250 (Fla. 2004). Instead, each litigant must bear the cost of their own attorney. *Id.* Here, the Receiver has not pled the existence of a contract authorizing an award of attorneys' fees, nor is the court aware of a statute affording such relief for the claims in Count IV, V, and VI. For these reasons, the court will dismiss the prayer for attorneys' fees in Count IV, V, and VI, and will give the Receiver leave to file an amended complaint.

CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendants' motion to dismiss or, in the alternative, for more definite statement [DE # 9] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The defendants' motion to dismiss Count I (Florida Uniform Fradulent Transfer Act) is **GRANTED**. This claim is **DISMISSED WITHOUT PREJUDICE**, with leave for the Receiver to file an amended complaint within **TEN (10) DAYS** from the date of entry of this order.

    b. The defendants' motion to dismiss the Receiver's prayer for attorneys' fees in Count IV (Aiding and Abetting and/or Breach of Fiduciary Duty), Count V (Conversion), and Count VI (Professional Malpractice) is **GRANTED**. The prayers for attorneys' fees are **DISMISSED WITHOUT PREJUDICE**, with leave for the Receiver to file an amended complaint within **TEN (10) DAYS** from the date of entry of this order.

10

Order Granting in Part and Denying in Part Defendants' Motion to Dismiss or for More Definite Statement
Pearlman v. Gabrielle Alexis, et al.
Case No. 09-20865-CIV-HURLEY/HOPKINS

   c   The defendants' motion to dismiss is otherwise **DENIED**.

   **DONE** and **ORDERED** in Chambers in West Palm Beach, Florida, this 25th   day of

September, 2009.

                  Daniel T. K. Hurley
                  U.S. District Judge

For updated court information, visit unofficial Web site
at http://us.geocities.com/uscts