UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(WEST PALM BEACH DIVISION)

CASE NO. 09-20865-CIV-HURLEY/HOPKINS
(Ancillary Proceeding to U.S.D.C. Case No. 08-81565-CIV-HURLEY/HOPKINS)

| | |
|---|---|
| JONATHAN E. PERLMAN, Esq., as court appointed Receiver of Creative Capital Consortium, LLC, et al., <br><br>     Plaintiff, <br><br> v. <br><br> GABRIELLE ALEXIS, an individual, and LAW OFFICES OF GABRIELLE ALEXIS, P.A., a Florida professional association, , a Florida corporation, MONDESIR & ALEXIS TITLE SERVICES, INC., a dissolved Florida corporation, <br><br>     Defendants. <br>                         / | **SECOND AMENDED COMPLAINT FOR DAMAGES AND TO AVOID AND RECOVER FRAUDULENT TRANSFERS AND FOR OTHER RELIEF** |

The Plaintiff, Jonathan E. Perlman, Esq., the court-appointed Receiver (the "Receiver")

of Creative Capital Consortium, LLC, A Creative Capital Concept$, LLC,[1] United Investment

Club, LLC, Reverse Auto Loan, LLC, Wealth Builders Circle, LLC, The Dream Makers Capital

Investment, LLC, G$ Trade Financial, Inc. and Unity Entertainment Group, Inc.[2], sues the

Defendants, Gabrielle Alexis, an individual ("ALEXIS"), and Law Offices of Gabrielle Alexis,

P.A., a Florida professional association ("GAPA") and MONDESIR & ALEXIS TITLE

---

[1]  Creative Capital Consortium, LLC and A Creative Capital Concept$, LLC shall sometimes collectively be referred to herein as "Creative Capital" or the "Creative Capital Entities."

[2] Creative Capital Consortium, LLC, A Creative Capital Concept$, LLC, United Investment Club, LLC, Reverse Auto Loan, LLC, Wealth Builders Circle, LLC, The Dream Makers Capital Investment, LLC, G$ Trade Financial, Inc. and Unity Entertainment Group, Inc. shall sometimes be collectively referred to as the "Receivership Entities."

SERVICES, INC. ("ALEXIS TITLE") (sometimes collectively referred to herein as the "Defendants"), and alleges:

## THE PARTIES, JURISDICTION AND VENUE

1.      The Receiver was appointed by the United States District Court for the Southern District of Florida pursuant to this Court's Order dated December 29, 2008 (the "Receivership Order") in the action styled: *Securities and Exchange Commission ("SEC") v. Creative Capital Consortium, LLC, A Creative Capital Concept$, LLC and George L. Theodule* (collectively, the "Receivership Defendants"), Case No. 08-81565-CIV-HURLEY/HOPKINS, pending in the United States District Court, Southern District of Florida (the "SEC Receivership Action").

2.      By Order dated December 31, 2008, the receivership was expanded to include United Investment Club, LLC and Reverse Auto Loan, LLC.[3]

3.      By Order dated September 21, 2009, the receivership was further expanded to include Wealth Builders Circle, LLC, The Dream Makers Capital Investment, LLC, G$ Trade Financial, Inc., and Unity Entertainment Group, Inc.

4.      Under the terms of the Receivership Order, the Receiver is authorized to investigate the affairs of the Receivership Entities, to marshal and safeguard these entities' assets, and to institute legal proceedings for the benefit and on behalf of the Receivership Entities' investors and other creditors.

5.      Pursuant to the Receivership Order, the Receiver is authorized and has standing to assert claims against third parties including but not limited to: (i) all legal and equitable claims available to the Receivership Entities prior to the institution of the SEC Receivership Action;

---

[3] Sancal Investment and Financial Services, Inc. was initially included as part of the December 31, 2008, expanded receivership order, but was later dropped by agreed order as a receivership entity. [DE # 42].

and (ii) claims to avoid and recover fraudulent and preferential transfers receiver for the Receivership Entities and by virtue of his status as a joint lien creditor of the Receivership Entities pursuant to Florida Statutes, 671.201(13) and 679.1021(1)(zz).

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§754 and 1692.

7. This Second Amended Complaint is brought pursuant to this Court's September 25, 2009 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss or For More Definite Statement (D.E.#16) and to accomplish the objectives of the Receivership Order, and is thus ancillary to the Court's exclusive jurisdiction over the receivership estate. Pursuant to the principles of ancillary jurisdiction or supplemental jurisdiction under 28 U.S.C. §1367, the Court in the SEC Receivership Action has supplemental jurisdiction over the claims set forth herein. Hence, venue is also proper in this Court.

8. The Court has personal jurisdiction over Defendant pursuant to 28 U.S.C. §§754 and 1692.

9. At all times material hereto, George Theodule ("Theodule") was an officer, director, managing agent and/or control person of each of the Creative Capital Entities. Theodule is a named defendant in the SEC Receivership Action. From and after the formation of each Creative Capital Entity, Theodule operated a massive Ponzi scheme receiving over $60 million of investor funds.

10. The Defendant, ALEXIS, is an individual residing in Palm Beach County, Florida. At all times material hereto, ALEXIS was a member of the Florida Bar with a concentration in real estate transactions who acted as outside general counsel to Creative Capital

3

under a written fee engagement letter executed by Theodule in his capacity as president of Creative Capital.

11.     The Defendant, GAPA, is a Florida professional association engaging in the practice of law which, at all times material hereto, was the alter ego of ALEXIS warranting a piercing of the corporate veil.  At all times material hereto, ALEXIS was an owner, officer, director and/or control person of GAPA and, in conjunction with ALEXIS, acted as outside general counsel to Creative Capital under a written fee engagement letter executed by Theodule in his capacity as president of Creative Capital.

12.     The Defendant, ALEXIS TITLE is a dissolved Florida corporation.  At all times material hereto, ALEXIS was an owner, officer, director and/or control person of ALEXIS TITLE, and ALEXIS TITLE acted as a real estate title company for and on behalf of ALEXIS and GAPA.

## FACTS COMMON TO ALL COUNTS

13.     On December 29, 2008, the Securities and Exchange Commission ("SEC") filed its Complaint for Injunctive and Other Relief (the "Complaint") against Creative Capital Entities. The SEC alleged that Theodule, through the Receivership Defendants, sold unregistered securities and violated various sections of the Securities Exchange Act of 1934 (the "Exchange Act").

14.     More specifically, the SEC alleged that all of the Receivership Defendants violated section 10(b) of the Exchange Act.

15.     The SEC sought a permanent injunction against the Receivership Defendants to restrain them from any further securities law violations.

16.     Additionally, the SEC sought (1) an order requiring the Receivership Defendants to provide a sworn accounting of all proceeds they received, directly or indirectly, as a result of the securities law violations; (2) an order requiring the Receivership Defendants to disgorge, with prejudgment interest, any ill-gotten gains they received; (3) the imposition of civil penalties pursuant to section 21(d) of the Exchange Act; (4) an order freezing the Receivership Defendants' assets pending resolution of the matter; (5) the appointment of a receiver over the Receivership Defemdmats; (6) an order requiring the Receivership Defendants to take steps necessary to repatriate to the territory of the United States all funds and assets of investors; and (7) an order requiring the Receivership Defendants to preserve records in their custody, possession or subject to their control.

17.     On December 29, 2008, upon the request of the SEC, the Court entered the Receivership Order appointing the Receiver as receiver over the Receivership Defendants, their subsidiaries, successors and assigns.

18.     By Order dated December 31, 2008, the receivership was expanded to include United Investment Club, LLC and Reverse Auto Loan, LLC.  Further, by Order dated September 21, 2009, the receivership was expanded to include Wealth Builders Circle, LLC, The Dream Makers Capital Investment, LLC, G$ Trade Financial, Inc., and Unity Entertainment Group, Inc.

19.     After a contested hearing, the Court entered a Preliminary Injunction on January 6, 2009 preventing Theodule from continuing to violate the securities laws as well as the other relief requested by the SEC, including disgorgement of ill-gotten gains.  The Receivership Defendants consented to the entry of a preliminary injunction by virtue of consents executed and filed by the Receiver on behalf of such entities.

20.     The offices of Creative Capital were found vacant when the Receiver obtained access to the premises. While certain documents and records have been recovered, others remain missing or destroyed.

21.     Prior to the receivership, Creative Capital, which promised to double investments within 90 days risk free, raised in excess of $60 million from thousands of investors by and through the use of over 100 investment clubs located in Florida, New Jersey, Georgia and other states.

22.     Subsequent to his appointment, the Receiver determined that Creative Capital had no legitimate business operations. Consequently, the Receiver determined that so-called "profit payments" made to investors by the Receivership Defendants, along with other payments that appear to have no legitimate business purpose, could have only come from money raised from other investors, and, as such, Creative Capital was operated as a classic Ponzi scheme.

23.     Since his appointment, the Receiver and his professionals have attempted to locate and secure money illegally raised from investors by the Receivership Defendants and the proceeds thereof. To that extent, the Receiver is initiating lawsuits against persons who illegally diverted assets from Creative Capital's possession, and who are otherwise liable to the Receiver for damages.

## THE FRAUDULENT INVESTMENT SCHEME
## OF THE CREATIVE CAPITAL ENTITIES

### A.     *Overview of the Scheme*

24.     The Creative Capital Entities have engaged in a fraudulent Ponzi scheme targeting the United States Haitian community and others since at least November 2007.

25.     Holding himself out as a pastor, Theodule ingratiated himself with investors by claiming he was offering his investment expertise to help build wealth in the Haitian community.

He also informed investors he used part of his trading profits to fund start-up businesses in the Haitian community, as well as business projects in Haiti and Sierra Leone.

26.     The Creative Capital Entities primarily attracted investors through word-of-mouth, and Theodule made his representations during face-to-face meetings in which he touted his ability to double investor funds in just 90 days. Theodule typically depicted his investment plan and boasts of incredible profits trading stocks and options on dry erase boards or flip charts.

27.     Theodule also routinely boasted to investors about Creative Capital's high rates of return, and stressed the need to begin investing as soon as possible. He told one investor he had made millionaires out of a significant number of people in the time it had taken her to decide to invest, and pressured her to liquidate the equity in her home to invest with him.

28.     The Creative Capital Entities' presentations emphasized the safety and security of investing with them. They guaranteed investors 100% returns with no risk, and claimed to invest in the stocks and options of well-known companies such as Google, John Deere, Monsanto, Best Buy, Gamestop, and others.

29.     Since the commencement of the investment scheme, the Creative Capital Entities have raised more than $60 million from thousands of investors nationwide.

30.     While the scheme was being perpetrated, Theodule, using Creative Capital funds and other property owned by Creative Capital, acquired certain real and personal property as nominee for Creative Capital, the actual owner of such property. Indeed, in his sworn accounting of assets filed with the Court, Theodule expressly acknowledged several such assets being acquired in such manner, and that such assets were property of Creative Capital and not of himself individually.

**B.     Investor Funds Are Raised Through a Network of Investment Clubs under the Auspices of a Bogus, Self-Regulatory Agency**

31.     To add to investors' sense of security, Theodule directed prospective investors to form "investment clubs," which a purported self-regulatory agency, Smart Investment Management Services, LLC ("SIMS"), helped the investors form.  This entity also supposedly protected investors through independent verification of their deposits.

32.     In reality, SIMS was a private company run by a former Creative Capital employee and not a regulatory entity.

33.     The investment clubs pooled investor funds and sent them to Creative Capital for a 90-day period, during which Theodule purportedly traded stocks and options on behalf of the investment club members.

34.     Unlike a real investment club, the members did not participate in making investment decisions, rarely had club meetings, and deposited funds exclusively with the Creative Capital Entities.

35.     Thus, the investment clubs served principally as vehicles to funnel funds to Theodule and Creative Capital.

36.     The investment clubs typically required a minimum $1,000 investment per investor, which the investor could not withdraw during the 90-day investment period.

37.     The investment clubs deposited the investors' funds into their own bank accounts, pooled the funds, and remitted the money to Creative Capital, minus a 10% club commission.

38.     At the end of the 90-day investment period, when the Creative Capital Entities had purportedly doubled the investment amount, they supposedly returned the principal and profits back to the investment clubs, minus a 40% commission on the profits.   Prior to

8

distributing the proceeds back to the individual club members, the investment clubs typically charged a second 10% commission on the principal.

## C.     *Fraudulent Misrepresentations and Omissions*

39.     In connection with Creative Capital's fraudulent Ponzi scheme, numerous material misrepresentations and omissions were made regarding Creative Capital's business, Theodule's stock trading, and the use of investor funds.

40.     For example, Theodule's claimed success in trading stocks and options was demonstrably false.  Indeed, soon after his appointment, the Receiver came to learn that of the more than $18.3 million that had been deposited in brokerage accounts Theodule controlled, he had lost approximately 98% of those funds trading stocks and options.  In fact, Theodule consistently lost money trading in those accounts since November 2007, and never generated any net trading profits.

41.     Soon after his appointment, however, the Receiver came to learn that Creative Capital hid its losses from current and prospective investors by transferring approximately $19.1 million from new investor funds as principal and purported profits to existing investment clubs and individual investors.

42.     Additionally, Theodule claimed he used trading profits to fund new business ventures, some of which benefitted the Haitian community in the United States and Haiti, and others in Sierra Leone.

43.     In reality, there were no trading profits because the funds of the Creative Capital Entities: (i) had been used to pay earlier investors their purported profits; and (ii) had been misappropriated for the personal use and benefit of Theodule, his friends and his family.

44.     Theodule's representations about the safety and security of investors' funds were also patently false. SIMS was not a regulatory agency, but rather a private corporation headed by a former Creative Capital employee.

45.     Further, there was no evidence that SIMS has access to or otherwise verified the deposits to ensure the safety of investor funds. To the contrary, the Receiver came to learn that Theodule had commingled investor funds extensively with his own personal accounts and had misappropriated at least $14 million. This amount includes net transfers of at least $2.1 million to his personal bank accounts, cash withdrawals of more than $1.4 million and more than $700,000 for apparent personal expenses such as multiple luxury vehicles, credit card bills, a wedding payment, a down payment for the purchase of a house, and over $12.2 million to his personal brokerage accounts.

46.     Thus, Theodule misrepresented the safety and security of the Creative Capital investments when he led investors to believe: (i) they could withdraw their funds any time after the initial 90-day investment period; (ii) there was no risk; and (iii) SIMS verified the security of their funds.

47.     At all times material hereto, the Creative Capital Entities were undercapitalized and insolvent.

**D.      Defendants' Involvement in the Scheme**

48.     ALEXIS's and GAPA's involvement in the ongoing scheme commenced in March, 2008, and was accomplished during the remainder of 2008 and thereafter primarily as outside "general counsel" to Creative Capital.

49.     Between March and November of 2008, the Defendants, in bad faith, received at least $6,869,617.50 of fraudulent transfers from Creative Capital for little or no consideration.

50.    In addition, during the time ALEXIS and GAPA represented Creative Capital, they engaged in multiple breaches of fiduciary duty, including the duties of loyalty and care by, among other breaches, failing to undertake sufficient measures to protect the interests of Creative Capital in regard to certain transactions, by receiving multiple fraudulent transfers in bad faith and by otherwise placing the interests of herself, GAPA, Theodule and Dolce Regency Suites, LLC ("Dolce Regency") ahead of her client, Creative Capital, to the extreme detriment of Creative Capital.

### The Written Fee Agreement

51.    In a document dated March 27, 2008, GAPA, by and through ALEXIS, and Creative Capital, by and through Theodule, executed a Retainer Agreement (the "Retainer Agreement") whereby ALEXIS and her law firm agreed to provide outside "general counsel" legal services to Creative Capital "in connection with the functioning of CLIENT'S company." The Retainer Agreement further described the legal services as follows:

> to include but are not limited to: providing necessary legal advice to CLIENT on issues *related to Real Estate Transactions, Mortgage Programs and Contracts; reviewing purchase agreements for accuracies in preparation for closings of the transactions; preparing agreements between partners of the Real Estate programs with CLIENT;* preparing contracts and agreements for individuals desiring to participate in the different mortgage programs that CLIENT will offer.

(emphasis added).

52.    While the Retainer Agreement was initially based upon an hourly fee basis, in a document dated May 2, 2008, entitled Amendment to Retainer Agreement, GAPA and Creative Capital agreed that the fee agreement would be modified from an hourly rate to a fixed monthly amount of $10,000. Between March of 2008 and June of 2008, Creative Capital paid ALEXIS

and GAPA as provided under the May 2, 2008, modified fee agreement. Notably, no written fee agreement ever existed between or among Theodule, ALEXIS or GAPA.

### The Dolce Regency Transaction

53.     In the fall of 2008, ALEXIS and GAPA, in breach of their duties owed to Creative Capital, undertook the representation of a limited liability company, Dolce Regency, controlled by Theodule as the managing member for the benefit of Creative Capital.

54.     In a document that purports to have been executed on an undisclosed date in June, 2008, Pacific Atlantic Investments, LLC and Theodule executed an Operating Agreement of Dolce Regency Suites, LLC (the "Dolce Operating Agreement") which, among other things, acknowledged Theodule as the managing member and 50% membership interest owner of such entity.

55.     Contrary to what the Dolce Operating Agreement provided, Creative Capital, not Theodule, was the actual owner of the membership interests in Dolce Regency. This condition is consistent with, among other things, his prior and ongoing custom and practice of acquiring Creative Capital assets in his own name as nominee for Creative Capital. Moreover, Theodule told many of his investment club presidents that he had purchased Dolce Regency for the benefit of the Creative Capital investors.

56.     In addition, ALEXIS and GAPA had only one client – Creative Capital – for whom she was performing and being paid $10,000 a month for real estate related legal services under the written Retainer Agreement. She and GAPA were therefore well aware of the fiduciary duties owed to Creative Capital in ensuring that its interests were adequately and properly protected in regard to the Dolce Regency transaction.

57.     On or about August 12, 2008, Theodule, as the managing member of Dolce Regency, executed a Membership Interest Purchase and Sale Agreement (the "Dolce Agreement").

58.     Pursuant to the Dolce Agreement, Dolce Regency was to acquire certain controlling membership interests in certain entities that owned a valuable condo-hotel project in central Florida.

59.     Notably, the Dolce Agreement expressly disclosed ALEXIS and GAPA as counsel for Dolce Regency in regard to the transactions that were the subject of the Dolce Agreement.

60.     In addition, the transactions contemplated under the Dolce Agreement were directly within the scope of Retention Agreement, i.e., they involved "***Real Estate Transactions ... and Contracts; reviewing purchase agreements for accuracies in preparation for closings of the transactions; preparing agreements between partners of the Real Estate programs with CLIENT.***" (emphasis added).

61.     On August 13, 2008, ALEXIS and GAPA caused $7 million to be wire transferred to the attorneys for the seller under the Dolce Agreement from a trust account entitled "LAW OFFICES OF GABRIELLE ALEXIS PA - TRUST ACCOUNT - REAL ESTATE TRANSACTIONS" (hereinafter, the "GAPA Trust Account"). The $7 million was part of $11 million of investor monies that had been wire transferred into the GAPA Trust Account on June 23, 2008 (the "First Investor Funds Transfer").

62.     As a result of the closing of the Dolce Regency transaction, Creative Capital acquired a 50% membership interest in Dolce Regency in the name of Theodule.

63.     At all times material hereto, ALEXIS and GAPA knew or should have known that Creative Capital was to own the 50% interest in Dolce Regency, and not Theodule individually.

64.     Among other irregularities, during 2008, ALEXIS and GAPA were providing legal services in regard to a substantially related matter – a real estate transaction involving Dolce Regency that was expressly within the scope of the Creative Capital Retention Agreement. Yet, ALEXIS and GAPA never sought or obtained any oral or written conflict waivers from Creative Capital, Pacific Atlantic Investments, LLC or Dolce Regency regarding such purported joint representation, nor did she or her law firm undertake any measures to ensure that the interests of her client, Creative Capital, were adequately protected.

65.     Before and after the filing of the SEC Receivership Action, this Court's freeze order, and its appointment of the Receiver, Theodule surreptitiously offered Dolce Regency for sale to certain third parties. Incredibly, Theodule has since filed two sworn statements with the Court, the first of which ignored any ownership interest in such entity, and the second of which disavowed the existence of any interest by either himself or Creative Capital in Dolce Regency.

66.     ALEXIS, meanwhile, has likewise falsely executed a sworn declaration denying that the Dolce Regency transaction had any relation to her former client, Creative Capital, in direct contravention of the documents maintained by herself and GAPA.

### The Fraudulent Transfers to the Theodule/Alexis' OptionsXpress Account

67.     At some point during 2008, Theodule and ALEXIS in their individual names jointly opened a brokerage account at OptionsXpress with Account No. 0549-6260 (the "Alexis' Options Account").

68.     On or about July 8, 2008, ALEXIS and GAPA, for no consideration and without any legitimate or justifiable business purpose, caused $4 million of the First Investor Funds

Transfer to be transferred from the GAPA Trust Account into the Alexis' Options Account for the benefit of ALEXIS and Theodule (the "First Options Transfer").

69.     On or about July 9, 2008, Theodule transferred $3 million from other Creative Capital accounts into the GAPA Trust Account ("Second Investor Funds Transfer").   On or about September 11, 2008, for no consideration and without any legitimate or justifiable business purpose, ALEXIS and GAPA fraudulently transferred $2.147 million of the Second Investor Funds Transfer into Alexis' Options Account for the benefit of ALEXIS and Theodule (the "Second Options Transfer").   The First and Second Options Transfers are evidenced by the payment summary and back up documents attached as part of Composite Exhibit "1."

70.     Over the next few weeks, ALEXIS, personally approved, and through her internet access login for her OptionsXpress account witnessed Theodule recklessly lose through speculative day-trading the $4 million of the First Investor Funds Transfer and the $2.147 million of the Second Investor Funds Transfer without ever undertaking any efforts whatsoever to protect the interests of Creative Capital in regard to such funds.

## The Other Fraudulent Transfers

71.     Between March 31, 2008 and November 3, 2008, the Defendants received $722,617.50 in fraudulent transfers from Creative Capital for little or no consideration, which are evidenced by the payment summary and back-up documents attached as part of Composite Exhibit "1."   The First and Second Options Transfers, along with the additional $722,617.50 in transfers described in Composite Exhibit "1," along with any other payments paid to Defendants which the Receiver may subsequently discover through the course of his ongoing investigation, shall collectively be referred to herein as the "ALEXIS Transfer."

72.     Thus, in total, the Defendants received $6,869,617.50 of fraudulent transfers from Creative Capital between March and November of 2008.

**E.     Conditions Precedent**

73.     All conditions precedent to the filing of this action have been performed, waived or have occurred.

**COUNT 1**
**Action to Avoid and Recover**
**Fraudulent Transfers Made By Creative Capital as Debtor Pursuant**
**to Chapter 726 of The Florida Statutes**

74.     The Receiver realleges paragraphs 1 through 73 above as if fully set forth herein.

75.     As a result of failed investments in excess of $5.7 Million made by United Investment Club, LLC, Reverse Auto Loan, LLC, Wealth Builders Circle, LLC, and The Dream Makers Capital Investment, LLC (the "Creditor Receivership Entities") into Creative Capital Consortium, LLC, and the claims of those Creditor Receivership Entities created in connection therewith, the Receiver, standing in the shoes of the Creditor Receivership Entities, is a "creditor" of Creative Capital, as defined by the Florida Uniform Fraudulent Transfer Act at Florida Statutes § 726 .101 et seq. ("FUFTA.").

76.     As a result of the creditor claims by the Creditor Receivership Entities, at all times material hereto, Creative Capital is a "debtor" as that term is defined by FUFTA.

77.     The ALEXIS Transfer is a "voidable" transfer under FUFTA, and furthermore rendered Creative Capital unable to pay the claims of the Receiver and the Creditor Receivership Entities in their respective capacities as creditors of Creative Capital under FUFTA.

78.     During 2008, Creative Capital (or Theodule, by and through funds received from Creative Capital) made the ALEXIS Transfer for less than reasonably equivalent value, as

reflected in and evidenced by Composite Exhibit "1", which is attached and incorporated herein by reference.

79.     Pursuant to Chapter 726 of the Florida Statutes, the Receiver may avoid any transfer of an interest of the debtor in property, or any obligation incurred by Creative Capital as a debtor, that was made within four (4) years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

> (A)     made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

80.     Pursuant to Chapter 726 of the Florida Statutes, the Receiver may recover, for the benefit of creditors of the estate, including the Creditor Receivership Entities, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

81.     The ALEXIS Transfer constituted a transfer of an interest in property of Creative Capital to ALEXIS, GAPA and ALEXIS TITLE within four years under Chapter 726 of the Florida Statutes.

82.     Creative Capital did not receive reasonably equivalent value for the ALEXIS Transfer, and the Creative Capital family of companies: (i) were insolvent at the time of the

ALEXIS Transfer or became insolvent as a result thereof; (ii) were engaged or were about to engage in a business or transaction for which the remaining assets of Creative Capital were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they came due.

83. In addition, Creative Capital made the ALEXIS Transfer with the actual intent to hinder, delay or defraud creditors of Creative Capital and such transfer was not received in good faith by ALEXIS, GAPA and ALEXIS TITLE . Among other badges of fraud, at or near the time of the ALEXIS Transfer, Creative Capital: (i) was insolvent; (ii) was not paying its debts as they became due; (ii) did not pay reasonably equivalent value for the ALEXIS Transfer; (iv) had, through its principals, defrauded creditors of millions of dollars; and (v) absconded.

84. As a result of the above, the Receiver can avoid the ALEXIS Transfer to ALEXIS, GAPA and ALEXIS TITLE pursuant to Chapter 726 of the Florida Statues and recover the value thereof for the benefit of the estate.

WHEREFORE, the Receiver demands judgment against ALEXIS, GAPA and ALEXIS TITLE as follows: (i) determining that the ALEXIS Transfer was fraudulent and avoiding and recovering the value thereof for the benefit of the estate; (ii) awarding pre-judgment interest; and (iii) for any other relief the Court deems appropriate.

### COUNT 2
### Unjust Enrichment
### (Against the Defendants)

85. The Receiver realleges paragraphs 1 through 84 above as if fully set forth herein.

86. This is a claim for unjust enrichment.

18

87. The Receivership Entities conferred a benefit on ALEXIS, GAPA and ALEXIS TITLE by making the ALEXIS Transfer to ALEXIS, GAPA and ALEXIS TITLE.

88. ALEXIS, GAPA and ALEXIS TITLE knowingly and voluntarily accepted and retained the benefit conferred by the Receivership Entities.

89. The circumstances are such that it would be inequitable and unjust for ALEXIS, GAPA and ALEXIS TITLE to retain the benefit conferred by the Receivership Entities without paying the Receiver the value thereof.

90. ALEXIS, GAPA and ALEXIS TITLE have been unjustly enriched at the expense of the Receivership Entities (and, ultimately, their investors).

91. The Receiver is entitled to the return of those amounts in which ALEXIS, GAPA and ALEXIS TITLE were unjustly enriched through disgorgement or any other appropriate remedy.

WHEREFORE, the Receiver respectfully requests this Court enter judgment in his favor and against ALEXIS, GAPA and ALEXIS TITLE in the amount that they were unjustly enriched, together with interest and costs, and for such further relief as the Court may deem just and proper.

### COUNT 3
### Imposition of Constructive Trust or
### Equitable Lien
### (Against the Defendants)

92. The Receiver realleges paragraphs 1 through 91 above as if fully set forth herein.

93. This is a claim to impose a constructive trust or equitable lien.

94. The Receivership Entities conferred a benefit on ALEXIS, GAPA and ALEXIS TITLE in the form of the ALEXIS Transfer to ALEXIS, GAPA and ALEXIS TITLE .

95.     ALEXIS, GAPA and ALEXIS TITLE knowingly and voluntarily accepted and retained the benefit conferred by the Receivership Entities.

96.     The circumstances are such that it would be inequitable and unjust for ALEXIS, GAPA and ALEXIS TITLE to retain the benefit conferred by the Receivership Entities without paying the Receiver the value thereof.

97.     ALEXIS, GAPA and ALEXIS TITLE have been unjustly enriched at the expense of the Receivership Entities (and, ultimately, their investors).

98.     The Receiver is entitled to the return of those amounts in which ALEXIS, GAPA and ALEXIS TITLE were unjustly enriched through disgorgement or any other appropriate remedy to the extent the proceeds thereof are readily identifiable.

WHEREFORE, the Receiver respectfully requests this Court enter judgment in his favor and against ALEXIS, GAPA and ALEXIS TITLE  to impose a constructive trust or equitable lien in the amount that they were unjustly enriched, together with interest and costs, and for such further relief as the Court may deem just and proper.

## COUNT 4
### Aiding and Abetting and/or
### Conspiracy to Breach of Fiduciary Duty
### (Against the Defendants)

99.     The Receiver re-alleges paragraphs 1 through 98 above as if fully set forth herein.

100.    At all material times, Theodule was an officer and director of the Creative Capital Entities and as such owed them a fiduciary duty to discharge his duties in good faith, with the care of an ordinarily prudent officer or director in a like position would exercise and in a manner reasonably believed to be in Creative Capital's best interests.

101.    Creative Capital's insolvency and undercapitalization since inception immediately transferred all of Theodule's fiduciary obligations to creditors.

102.    Theodule exhibited a conscious, grossly negligent, reckless and/or fraudulent disregard for the best interests of Creative Capital and its creditors in relation to the facts and circumstances as set forth above by engaging in a fraudulent Ponzi scheme and other questionable transactions with no legitimate or justifiable business purposes to advance the interests of himself and the Defendants.

103.    Theodule's breaches adversely impacted and conferred no benefit on Creative Capital, while conferring a benefit upon himself and numerous third parties, including but not limited to, the Defendants.

104.    The Defendants had knowledge of Theodule's breaches alleged above, and rendered substantial assistance in regard to such breaches.  In addition, the Defendants actively conspired with Theodule in regard to such breaches.

105.    Based upon the foregoing, the Defendants are liable for all damages proximately caused by the acts and omissions of Theodule and themselves.

106.    The foregoing breaches of Theodule, as aided and abetted by the Defendants as part of the ongoing conspiracy in regard to effectuating such breaches, have proximately caused damage to Creative Capital in excess of $60 million.

WHEREFORE, the Receiver demands judgment against the Defendants, jointly and severally, for compensatory damages, punitive damages and special damages including, but not limited to, the value of the over $60 million of the Transfers made to third parties, the increased insolvency of the Creative Capital Entities, out-of-pocket fees, costs and expenses attributable to and incurred or paid by the Creative Capital Entities and the Receiver, and for the value of all Creative Capital claims against third parties that were not properly or timely pursued by the

Creative Capital Entities, plus pre-judgment interest, court costs and for such other relief this Court deems appropriate.

### COUNT 5
### Conversion
### (Against the Defendants)

107.     The Receiver re-alleges paragraphs 1 through 106 above as if fully set forth herein.

108.     At all material times, ALEXIS, GAPA, and ALEXIS TITLE knew that the $6.87 million of funds transferred to ALEXIS, GAPA, and ALEXIS TITLE as set forth in Composite Exhibit "1" were the property of the Creative Capital Entities.

109.     By virtue of their acts and omissions, ALEXIS, GAPA, and ALEXIS TITLE engaged in unauthorized acts that caused the wrongful dissipation and transfer of such funds which deprived the Creative Capital Entities of their property permanently, which deprivation was and remains inconsistent with ownership of Creative Capital's interest in such property.

110.     The Defendants had knowledge of the above alleged facts at the time the conversion occurred

111.     Based upon the foregoing, the Defendants are liable for all damages proximately caused by their acts and omissions, including but not limited to the loss of the $6.87 million of funds transferred to ALEXIS, GAPA, and ALEXIS TITLE as set forth in Composite Exhibit "1."

WHEREFORE, the Receiver demands judgment against the Defendants, jointly and severally, for compensatory damages, punitive damages and special damages including, pre-judgment interest, court costs and for such other relief this Court deems appropriate.

## COUNT 6
### Professional Malpractice
### (Against ALEXIS and GAPA)

112.    The Receiver re-alleges paragraphs 1 through 111 above as if fully set forth herein.

113.    This is a claim seeking damages for professional malpractice against ALEXIS and GAPA.

114.    ALEXIS AND GAPA were employed by Creative Capital to provide legal advice during the time periods at issue.   ALEXIS was the partner/stockholder from GAPA that performed all or most of the work done by GAPA.

115.    As a result of the attorney-client relationship between Creative Capital and ALEXIS and GAPA, ALEXIS and GAPA owed certain duties to Creative Capital, including: (i) the duty of care, which requires an attorney to have the knowledge and skill necessary to confront the circumstances of each case; (ii) the duty to represent the client and handle the client's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity; (iii) the duty of loyalty, including the obligation to fully and fairly disclose actual or potential conflicts of interest; and (iv) fiduciary duties, including the duty to make a full and fair disclosure of material facts.

116.    In addition, as a member of the bar, Florida law required that certain ethical duties be observed and otherwise complied with by ALEXIS and GAPA in discharging their duties regarding, among others, conflicts or interest and entering into to personal transactions to the detriment of a client.

117.    Rather than honor the duties owed to Creative Capital, ALEXIS and GAPA instead advised and protected the interests of themselves, Theodule and Dolce Regency and

breached their duties owed to Creative Capital, including but not limited to, by: (i) in bad faith, receiving at least $6.87 million of fraudulent transfers from Creative Capital for no reasonably equivalent value; (ii) failing to fully and adequately protect the interests of Creative Capital in regard to all aspects of the Dolce Regency transactions; (iii) providing a sworn declaration with materially inaccurate representations regarding the Dolce Regency transactions intended to benefit Dolce Regency and Theodule to the detriment of Creative Capital; and (iv) converting $6.87 million of Creative Capital funds under the guise of legitimate legal representation.

118.    As a direct and proximate result of ALEXIS and GAPA's breaches of their duties, Creative Capital has suffered monetary losses and liability including, but not limited to, $6.87 million of funds transferred to ALEXIS AND GAPA as set forth in Composite Exhibit "1".

WHEREFORE, the Receiver demands that judgment be entered in his favor and against the Defendants, jointly and severally, as follows: (i) actual compensatory, consequential, incidental, special and exemplary damages in an amount to be proven at trial; (ii) punitive damages; (iii) such civil penalties as allowed by law; (iv) pre-judgment and post-judgment interest as allowed by law; and (v) such other and further legal and equitable relief as the Court deems just and proper.

**COUNT 7**
**Breach of Fiduciary Duty**
**(Against ALEXIS and GAPA)**

119.    The Receiver re-alleges paragraphs 1 through 118 above as if fully set forth herein.

120.    This is a claim seeking damages for breach of fiduciary duty against ALEXIS and GAPA.

121.     ALEXIS AND GAPA were employed by Creative Capital to provide legal advice during the time periods at issue.  ALEXIS was the partner/stockholder from GAPA that performed all or most of the work done by GAPA.

122.     As a result of the attorney-client relationship between Creative Capital and ALEXIS and GAPA, ALEXIS and GAPA owed certain duties to Creative Capital, including: (i) the duty of care, which requires an attorney to have the knowledge and skill necessary to confront the circumstances of each case; (ii) the duty to represent the client and handle the client's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity; (iii) the duty of loyalty, including the obligation to fully and fairly disclose actual or potential conflicts of interest; and (iv) fiduciary duties, including the duty to make a full and fair disclosure of material facts.

123.     In addition, as a member of the Florida Bar, law required that certain ethical duties be observed and otherwise complied with by ALEXIS and GAPA in discharging their duties regarding, among others, conflicts or interest and entering into to personal transactions to the detriment of a client.

124.     Rather than honor the fiduciary duties owed to Creative Capital, ALEXIS and GAPA instead advised and protected the interests of themselves, Theodule and Dolce Regency and breached their duties owed to Creative Capital, including but not limited to, by: (i) in bad faith, receiving at least $6.87 million of fraudulent transfers from Creative Capital for no reasonably equivalent value; (ii) failing to fully and adequately protect the interests of Creative Capital in regard to all aspects of the Dolce Regency transactions; (iii) providing a sworn declaration with materially inaccurate representations regarding the Dolce Regency transactions intended to benefit Dolce Regency and Theodule to the detriment of Creative Capital; and (iv)

converting $6.87 million of funds transferred to ALEXIS, GAPA, and ALEXIS TITLE as set forth in Composite Exhibit "1".

125.    As a direct and proximate result of ALEXIS and GAPA's breaches of their duties, Creative Capital has suffered monetary losses and liability including, but not limited to, in excess of $6.87 million.

WHEREFORE, the Receiver demands that judgment be entered in his favor and against the Defendants, jointly and severally, as follows: (i) actual compensatory, consequential, incidental, special and exemplary damages in an amount to be proven at trial; (ii) punitive damages; (iii) such civil penalties as allowed by law; (iv) costs of this suit as allowed by law; (v) pre-judgment and post-judgment interest as allowed by law; and (vi) such other and further legal and equitable relief as the Court deems just and proper.


Dated:  October 9, 2009
        Miami, Florida          Respectfully submitted,


                               By: /s/ Harris J. Koroglu
                                       David C. Cimo
                                       Florida Bar No.: 775400
                                       dcimo@gjb-law.com
                                       David P. Lemoie
                                       Florida Bar No.: 188311
                                       dlemoie@gjb-law.com
                                       GENOVESE JOBLOVE & BATTISTA, P.A.
                                       4400 Bank of America Tower
                                       100 Southeast Second Street
                                       Miami, Florida  33131
                                       Tel:  (305) 349-2300
                                       Fax:  (305) 349-2310
                                       Attorneys for Receiver
                                       Jonathan E. Perlman, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2009, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Harris J. Koroglu
Harris J. Koroglu

## SERVICE LIST
**JONATHAN E. PERLMAN, ESQ., as court appointed Receiver of Creative Capital
Consortium, LLC, et al. v. Gabrielle Alexis, et al.
CASE NO. 09-20865-CIV-HURLEY/HOPKINS
United States District Court, Southern District of Florida**

David C. Cimo, Esq.
Florida Bar No. 775400
dcimo@gjb-law.com
David P. Lemoie, Esq.
Florida Bar No. 188311
dlemoie@gjb-law.com
GENOVESE JOBLOVE & BATTISTA, P.A.
Bank of America Tower, 44th Floor
100 Southeast Second Street
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
*Attorneys for Plaintiff*

Barry M. Wax, Esq.
Florida Bar No. 509485
barrywax@bellsouth.net
Law Offices of Barry M. Wax
777 Brickell Avenue, Suite 1210
Miami, Florida 33131
Telephone: (305) 373-4400
Facsimile: (305) 381-7135
*Attorney for Defendants*

Kenneth S. Pollock, Esq.
Florida Bar No. 69558
ken@shendellpollock.com
Gary R. Shendell, Esq.
Florida Bar No. 964440
gary@shendellpollock.com
Shendell & Pollock, P.L.
One Park Place
621 N.W. 53rd Street, Suite 310
Boca Raton, Florida 33487
*Attorneys for Defendants*

10061-015/030v.2

## Securities and Exchange Commission

v.

## Creative Capital Consortium, LLC; A Creative Capital Concepts, LLC; and George L. Theodule

### Case No. 08-81565-CIV-HURLEY/HOPKINS

### United States District Court
### Southern District of Florida

### Payments to Law Offices of Gabrielle Alexis PA / Mondesir Alexis Title Services

| Bank | Clearing Date | Check No. | Payee | Amount |
|------|---------------|-----------|-------|--------|
| WAC - 2027 | 08/21/08 | Wire | Law offices of Gabrille Alexis, PA | $    50,000.00 |
| WAC - 2027 | 09/11/08 | 91 | Law offices of Gabrille Alexis, PA | 10,000.00 |
| WAC - 4141 | 03/31/08 | 92 | Law offices of Gabrille Alexis, PA | 10,000.00 |
| WAC - 4141 | 05/05/08 | Wire | Law offices of Gabrille Alexis, PA | 10,000.00 |
| WAC - 4141 | 05/27/08 | Wire | Law offices of Gabrille Alexis, PA | 60,000.00 |
| WAC - 4141 | 06/06/08 | Wire | Law offices of Gabrille Alexis, PA | 10,000.00 |
| WAC - 4141 | 06/24/08 | Wire | Law offices of Gabrille Alexis, PA | 50,000.00 |
| WAC - 4141 | 07/08/08 | Wire | Law offices of Gabrille Alexis, PA | 10,000.00 |
| WAC - 5699 | 08/01/08 | 1075 | Law offices of Gabrille Alexis, PA | 1,792.50 |
| WAC - 5699 | 08/06/08 | 1076 | Law offices of Gabrille Alexis, PA | 10,000.00 |
| WAC - 5699 | 08/20/08 | 1077 | Law offices of Gabrille Alexis, PA | 275.00 |
| WAC - 5699 | 09/30/08 | 1087 | Law offices of Gabrille Alexis, PA | 550.00 |
| WAC - 5699 | 09/18/08 | 1084 | Law offices of Gabrille Alexis, PA | 15,000.00 |
| WAC - 5699 | 10/17/08 | 1089 | Law offices of Gabrille Alexis, PA | 10,000.00 |
| WAC - 1714 | 11/03/08 | Wire | Law offices of Gabrille Alexis, PA | 5,000.00 |
| WAC - 1714 | 11/03/08 | Wire | Law offices of Gabrille Alexis, PA | 5,000.00 |
| WAC - 5699 | | | Law offices of Gabrille Alexis, PA | 50,000.00 |
| | | | | 307,617.50 |
| | | | | |
| WAC - 5699 | 07/11/08 | 1073 | Mondesir Alexis Title Services | 3,000.00 |
| WAC - 2027 | 07/15/08 | Wire | Mondesir Alexis Title Services | 300,000.00 |
| WAC - 2027 | 08/22/08 | Wire | Mondesir Alexis Title Services | 112,000.00 |
| | | | | 415,000.00 |
| | | | | |
| WAC - 2027 | 07/08/08 | Wire | George Theodule & Gabrielle Alexis Options Express Account 6260 | 4,000,000.00 |
| WAC - 2027 | 09/11/08 | Wire | George Theodule & Gabrielle Alexis Options Express Account 6260 | 2,147,000.00 |
| | | | | 6,147,000.00 |
| | | | | $  6,869,617.50 |

Note 1- On July 3, 2008, Creative Capital Consortium, LLC transferred $150,000 from Wachovia account ending 4141 to a Wachovia account ending 5699 in the name of Mondesir Alexis Title Services ("Mondesir"). A portion of the $150,000 was used to pay expenses for unidentified corporations ($3,000) and for transfers to the Law Offices of Gabrielle Alexis. P.A. for fees and expenses totaling $37,617.50 including $15,000 for a partnership agreement between George Theodule and Gabrielle Alexis known as G & G Partnership ("G & G"). The balance remaining in the Mondesir account, $109,382.50, was transferred to Wachovia account ending in 1714 in the name of Law of Offices of Gabrielle Alexis IOTA Trust Account ("IOTA–1714"), which is further discussed in Note 2.

Note 2- On November 3, 2008, $109,382.50 was transferred from Mondesir to IOTA-1714. The funds were disbursed to third parties, George Theodule and the Law Offices of Gabrielle Alexis for fees totaling $60,000 including $50,000 for G & G partnership agreement.



EXHIBIT
1



### Interest On Lawyers Trust Account

WACHOVIA   01   2000029402027   036   130   0   37

**Electronic Delivery**

LAW OFFICES OF GABRIELLE ALEXIS, PA   CB
IOLTA TRUST ACCOUNT
REAL ESTATE TRANSACTIONS
1325 CONGRESS AVENUE SUITE 100
BOYNTON BEACH FL 33426

## Interest On Lawyers Trust Account

8/01/2008 thru 8/29/2008

Account number:          2000029402027
Account owner(s):        LAW OFFICES OF GABRIELLE ALEXIS, PA
                         IOLTA TRUST ACCOUNT
                         REAL ESTATE TRANSACTIONS

### Account Summary

| | |
|---|---|
| Opening balance 8/01 | $9,563,192.00 |
| Interest paid | 2,963.75 + |
| Other withdrawals and service fees | 7,250,835.75 - |
| Closing balance 8/29 | $2,315,320.00 |

### Deposits and Other Credits

| Date | Amount | Description |
|---|---|---|
| 8/29 | 2,963.75 | INTEREST FROM 08/01/2008 THROUGH 08/29/2008 |
| Total | $2,963.75 | |

### Interest

| | |
|---|---|
| Number of days this statement period | 29 |
| Annual percentage yield earned | 0.78% |
| Interest earned this statement period | $2,963.75 |
| Interest paid this statement period | $2,963.75 |
| Interest paid this year | $11,083.72 |

### Other Withdrawals and Service Fees

| Date | Amount | Description |
|---|---|---|
| 8/01 | 85,872.00 | FUNDS TRANSFER (ADVICE 2008080100079091)<br>SENT TO ARVEST BANK /<br>BNF=G & R AVIATION<br>OBI=FOR SKY KING ON BEHALF OF GEORGE TH<br>RFB=2000000561330729 08/01/08 04:58PM ET |
| 8/13 | 7,000,000.00 | FUNDS TRANSFER (ADVICE 2008081300046145)<br>SENT TO SUNTRUST BANK /<br>BNF=DEAN, MEAD, EGERTON, BLOODWORTH<br>OBI=MEMBERSHIP PURCHASE OF REGENCY I, L<br>RFB=2000000561330729 08/13/08 03:01PM ET |
| 8/21 | 50,000.00 | FUNDS TRANSFER (ADVICE 2008082100049999)<br>SENT TO LAW OFFICES OF GA/<br>BNF=LAW OFFICES OF GABRIELLE ALEXIS<br>OBI=PER GEORGE THEODULE AUTHORIZATION F<br>RFB=2000000761330729 08/21/08 03:58PM ET |

A

*Other Withdrawals and Service Fees continued on next page.*



## Interest On Lawyers Trust Account

**WACHOVIA**  01   2000029402027  036  130     0  37
Electronic Delivery

հահահահահահահահ
LAW OFFICES OF GABRIELLE ALEXIS, PA
IOLTA TRUST ACCOUNT                           CB
REAL ESTATE TRANSACTIONS
1325 CONGRESS AVENUE SUITE 100
BOYNTON BEACH FL 33426

## Interest On Lawyers Trust Account                    8/30/2008 thru 9/30/2008

Account number:       2000029402027
Account owner(s):     LAW OFFICES OF GABRIELLE ALEXIS, PA
                      IOLTA TRUST ACCOUNT
                      REAL ESTATE TRANSACTIONS

### Account Summary

| | |
|---|---|
| Opening balance 8/30 | $2,315,320.00 |
| Deposits and other credits | 390,778.00 + |
| Interest paid | 439.09 + |
| Checks | 10,000.00 - |
| Other withdrawals and service fees | 2,696,217.09 - |
| Closing balance 9/30 | $320.00 |

### Deposits and Other Credits

| Date | Amount | Description |
|---|---|---|
| 9/03 | 278,778.00 | TRNSFR 2000043533176          09/03 ONLINE TRNSFR CONFIRMATION # VY120483296 |
| 9/10 | 112,000.00 | TRNSFR 2000043533176          09/10 ONLINE TRNSFR CONFIRMATION # VY121630578 |
| 9/30 | 439.09 | INTEREST FROM 08/30/2008 THROUGH 09/30/2008 |
| Total | $391,217.09 | |

### Interest

| | |
|---|---|
| Number of days this statement period | 32 |
| Annual percentage yield earned | 0.64% |
| Interest earned this statement period | $439.09 |
| Interest paid this statement period | $439.09 |
| Interest paid this year | $11,502.61 |

### Checks

| Number | Amount | Date posted | Number | Amount | Date posted | Number | Amount | Date posted |
|---|---|---|---|---|---|---|---|---|
| 0091 | 10,000.00 | 9/11 | Total | $10,000.00 | B | | | |

| Date | Received From | Deposit Amount | Send To | Withdraw Amount | |
|---|---|---|---|---|---|
| 06/23/08 | Crowne Gold Inc. | 11,000,000.00 | | | |
| 06/30/08 | Interest | 1,796.16 | | | |
| 06/30/08 | | | IOLTA | 1,796.16 | |
| 07/08/08 | | | Chase to Acct 05496260 for Option Express | 4,000,000.00 | O |
| 07/09/08 | George Theodule | 3,000,000.00 | | | |
| 07/15/08 | | | Mondesir & Alexis Title for Real Estate contract | 300,000.00 | L |
| 07/31/08 | | | G & R Aviation Sky King Air Express | 136,808.00 | |
| 07/31/09 | Interest | 6,303.81 | IOLTA | 6,303.81 | |
| 08/01/08 | | | G & R Aviation Sky King Air Express | 85,872.00 | |
| 08/13/09 | | | DEAN, MEAD, EGERTON | 7,000,000.00 | |
| 08/21/08 | | | Law Offices of Alexis/Partners Agreement | 50,000.00 | A |
| 08/22/08 | | | Mondesir & Alexis Title | 112,000.00 | M |
| 08/29/08 | Interest | 2,963.75 | IOLTA | 2,963.75 | |
| 09/03/08 | Transfer | 278,778.00 | CB-DH, LLC | 119,185.33 | |
| | | | Showcase Investment | 159,592.67 | |
| 09/10/08 | Mondesir & Alexis T | 112,000.00 | | | |
| 09/11/08 | | | Check 0091 September Retainer/ Gabrielle Alexis P.A. | 10,000.00 | B |
| | | | Chase Manhattan Option Express | 2,417,000.00 | P |

**WACHOVIA**

Business Cash Manager Checking

01   2000027474141 035 130        0 33   SAFEKEPT   Replacement Statement

CREATIVE CAPITAL CONSORTIUM LLC
3156 HAMLIN WAY               CB
WELLINGTON FL 33414

Business Cash Manager Checking                    3/25/2008 thru 3/31/2008

Account number:      2000027474141
Account owner(s):    CREATIVE CAPITAL CONSORTIUM LLC

Account Summary

| | |
|---|---|
| Opening balance 3/25 | $0.00 |
| Deposits and other credits | 246,571.69 + |
| Checks | 23,500.00 - |
| Other withdrawals and service fees | 2,000.00 - |
| Closing balance 3/31 | $221,071.69 |

Deposits and Other Credits

| Date | Amount | Description |
|---|---|---|
| 3/25 | 200.00 | DEPOSIT |
| 3/28 | 49,000.59 | COUNTER DEPOSIT |
| 3/28 | 132,970.88 | FUNDS TRANSFER (ADVICE 20080328000025550) RCVD FROM WASHINGTON MUTUAL/ ORG=YVON P BLAISE NRB=1696161246837  OBI= REF=20080328000004171  03/28/08  10:39AM ET |
| 3/31 | 64,400.22 | COUNTER DEPOSIT |
| Total | $246,571.69 | |

Checks

| Number | Amount | Date | Number | Amount | Date | Number | Amount | Date |
|---|---|---|---|---|---|---|---|---|
| 0091 | 13,500.00 | 3/31 | 0092 | 10,000.00 | 3/31 | Total | $23,500.00 | |

Other Withdrawals and Service Fees

C

| Date | Amount | Description |
|---|---|---|
| 3/31 | 2,000.00 | COUNTER WITHDRAWAL |
| Total | $2,000.00 | |

WACHOVIA BANK, N.A. , SOUTHDALE                    page 1 of 2

Creative Capital Consortium, LLC          092

March 27, 2008   DATE

PAY TO THE ORDER OF   Law Offices of Gabrielle Alexis, PA          $ 10,000 —

Ten Thousand & 00/100          DOLLARS

WACHOVIA
Wachovia Bank, N.A.
wachovia.com

FOR

⑈000092⑈ ⑈067006432⑈ 20000274741441⑈          ⑈0001000000⑈

C

0631075134
WACHOVIA NA SPECIAL DEPOT
ORLANDO FL 833122000 12PK
4034537559

REQUEST 00003183900000000 10000.00
ROLL ECIA  20080331  000004034537559
JOB ECIA P  ACCT 0032000027474141
REQUESTOR A486171
1009828  10/31/2008

Summons .Subpoenas
PA4292
Philadelphia PA 19101

**WACHOVIA**

Business Cash Manager Checking

04    2000027474141 035 130        0  33      SAFEKEPT    Replacement Statement

Other Withdrawals and Service Fees continued

| Date. | Amount | Description |
|---|---|---|
| 5/02 | 2,000.00 | FUNDS TRANSFER  (ADVICE 2008050200047392)<br>SENT TO MARIE B. RICHARDS/<br>BNF=<br>OBI=<br>RFB=            05/02/08  02:32PM ET |
| 5/02 | 12,840.00 | FUNDS TRANSFER  (ADVICE 2008050200015736)<br>SENT TO UNITED INVESTMENT/<br>BNF=<br>OBI=REF: BOCA RATON OFFICE<br>RFB=            05/02/08  09:36AM ET |
| 5/02 | 113,416.00 | FUNDS TRANSFER  (ADVICE 2008050200016044)<br>SENT TO UNITED INVESTMENT/<br>BNF=<br>OBI=<br>RFB=            05/02/08  09:37AM ET |
| 5/02 | 165,806.13 | FUNDS TRANSFER  (ADVICE 2008050200042168)<br>SENT TO BANK OF AMERICA /<br>BNF=CREATIVE CAPITAL CONCEPT OF BOCA<br>OBI=<br>RFB=            05/02/08  02:27PM ET |
| 5/05 | 290.00 | PURCHASE    TAP TAP HAITIAN RE    05/03<br>4828001763978     MIAMIBEACH    FL 8011V219000 |
| 5/05 | 3,505.00 | PURCHASE    DELTA AIR   006234    05/03<br>4828001763978     ATLANTA     GA 8011V235812 |
| 5/05 | 10,000.00 | FUNDS TRANSFER  (ADVICE 2008050500042374)<br>SENT TO  LAW OFFICES OF GA/<br>BNF=<br>OBI=<br>RFB=            05/05/08  02:45PM ET |
| 5/05 | 12,800.00 | FUNDS TRANSFER  (ADVICE 2008050500014835)<br>SENT TO WASHINGTON MUTUAL/<br>BNF=PRODUCTIVE CAPITAL CONCEPTS<br>OBI=<br>RFB=            05/05/08  09:51AM ET |
| 5/05 | 276,920.00 | FUNDS TRANSFER  (ADVICE 2008050500014897)<br>SENT TO UNITED INVESTMENT/<br>BNF=<br>OBI=<br>RFB=            05/05/08  10:07AM ET |
| /05 | 25.00 | PURCHASE    DELTA AIR   006076    05/05<br>4828001763978     DALLAS     TX 8011V205812 |
| /05 | 25.00 | PURCHASE    DELTA AIR   006076    05/05<br>4828001763978     DALLAS     TX 8011V215812 |
| /05 | 25.00 | PURCHASE    DELTA AIR   006076    05/05<br>4828001763978     DALLAS     TX 8011V235812 |
| /05 | 341.00 | PURCHASE    DELTA AIR   006216    05/05<br>4828001763978     DALLAS     TX 8011V265812 |

D

ther Withdrawals and Service Fees continued on next page.

**WACHOVIA**

Business Cash Manager Checking

| 13 | 2000027474141 | 036 | 130 | 0 | 33 | SAFEKEPT | Replacement Statement |

**Other Withdrawals and Service Fees continued**

| Date | Amount | Description |
|------|--------|-------------|
| 5/23 | 27,800.00 | FUNDS TRANSFER (ADVICE 2008052300043459)<br>SENT TO WASHINGTON MUTUAL/<br>REF=PRODUCTIVE CAPITAL CONCEPTS<br>OBI=<br>RFB=   05/23/08  02:39PM ET |
| 5/23 | 60,000.00 | TRNSFR 2000027474154                  05/23<br>ONLINE TRNSFR CONFIRMATION # VY103709909 |
| 5/27 | 300.00 | FUNDS TRANSFER (ADVICE 2008052700049846)<br>SENT TO NATASHA A CATLINE/<br>REF=NATASHA CATLINE<br>OBI=<br>RFB=2000000863316263  05/27/08  03:04PM ET |
| 5/27 | 10,500.00 | FUNDS TRANSFER (ADVICE 2008052700023598)<br>SENT TO EAST BROWARD PRIV/<br>REF=EAST BROWARD PRIVATE INVESTMENT CLU<br>OBI=<br>RFB=2000000463316263  05/27/08  10:14AM ET |
| 5/27 | 16,350.00 | FUNDS TRANSFER (ADVICE 2008052700023267)<br>SENT TO WASHINGTON MUTUAL/PROGRESSIVE INVES<br>REF=PROGRESSIVE INVESTMENT CLUB<br>OBI=<br>RFB=2000000363316263  05/27/08  10:10AM ET |
| 5/27 | 60,000.00 | FUNDS TRANSFER (ADVICE 2008052700030200)<br>SENT TO LAW OFFICES OF GA/<br>REF=LAW OFFICES OF GABRIELLE ALEXIS<br>OBI=<br>RFB=2000000663316263  05/27/08  11:11AM ET |
| 5/27 | 67,500.00 | FUNDS TRANSFER (ADVICE 2008052700045045)<br>SENT TO UNITED INVESTMENT/<br>REF=UNITED INVESTMENT CLUB<br>OBI=<br>RFB=2000000763316263  05/27/08  01:29PM ET |
| 5/27 | 91,406.48 | FUNDS TRANSFER (ADVICE 2008052700024249)<br>SENT TO BANK OF AMERICA  /REVERSE AUTO LOAN<br>REF=REVERSE AUTO LOAN<br>OBI=<br>RFB=2000000563316263  05/27/08  10:21AM ET |
| 5/27 | 250,700.00 | FUNDS TRANSFER (ADVICE 2008052700021949)<br>SENT TO UNITED INVESTMENT/<br>REF=UNITED INVESTMENT CLUB<br>OBI=<br>RFB=2000000263316263  05/27/08  09:57AM ET |
| 5/28 | 4,490.00 | FUNDS TRANSFER (ADVICE 2008052800024079)<br>SENT TO INNOVATIVE INVEST/<br>REF=INNOVATIVE INVESTMENT GROUP<br>OBI=<br>RFB=2000001163316263  05/28/08  10:45AM ET |

E

Other Withdrawals and Service Fees continued on next page.

**WACHOVIA**

Business Cash Manager Checking

07    200002747141 036 130      0 33    SAFEKEPT    Replacement Statement

Other Withdrawals and Service Fees continued

| Date | Amount | Description | |
|------|--------|-------------|---|
| 6/06 | 43.76 | PURCHASE    NAPOLI'S PIZZERIA    06/05 | |
|      |       | 4828801804835      LAKE WORTH   FL 5026Y201000 | |
| 6/06 | 57.86 | PURCHASE    CHILI'S GR17200000    06/04 | |
|      |       | 4828801804835      WELLINGTON   FL 5026Y234265 | |
| 6/06 | 303.08 | PURCHASE    OFFICE DEPOT #2280    06/04 | |
|      |       | 4828801804835      WELLINGTON   FL 5026Y233281 | |
| 6/06 | 1,033.09 | PURCHASE    EMBASSY SUITES LAK    06/05 | |
|      |       | 4828801783976      ORLANDO   FL 8011V247315 | |
| 6/06 | 1,102.50 | PURCHASE    EMBASSY SUITES LAK    06/01 | |
|      |       | 4828801783976      ORLANDO   FL 8011V227315 | |
| 6/06 | 3,382.69 | FUNDS TRANSFER (ADVICE 2008060600022799) | |
|      |       | SENT TO  BANK OF AMERICA /REVERSE AUTO LOAN | |
|      |       | REF=REVERSE AUTO LOAN | |
|      |       | OBI= | |
|      |       | RFB=2000005863316263  06/06/08  10:55AM ET | |
| 6/06 | 3,600.00 | FUNDS TRANSFER (ADVICE 2008060600020001) | |
|      |       | SENT TO  WASHINGTON MUTUAL/PRODUCTIVE CAPITA | |
|      |       | REF=PRODUCTIVE CAPITAL CONCEPTS | |
|      |       | OBI= | |
|      |       | RFB=2000005763316263  06/06/08  10:28AM ET | |

| 6/06 | 10,000.00 | FUNDS TRANSFER (ADVICE 2008060600058138) | F |
|      |       | SENT TO  LAW OFFICES OF GA/ | |
|      |       | REF=LAW OFFICES OF GABRIELLE ALEXIS | |
|      |       | OBI= | |
|      |       | RFB=2000006063316263  06/06/08  04:21PM ET | |

| 6/06 | 30,500.00 | FUNDS TRANSFER (ADVICE 2008060600019784) | |
|      |       | SENT TO  UNITED INVESTMENT/ | |
|      |       | REF=UNITED INVESTMENT CLUB | |
|      |       | OBI= | |
|      |       | RFB=2000005863316263  06/06/08  10:25AM ET | |
| 6/06 | 54,000.00 | FUNDS TRANSFER (ADVICE 2008060600090292) | |
|      |       | SENT TO  UNITED INVESTMENT/ | |
|      |       | REF=UNITED INVESTMENT CLUB | |
|      |       | OBI= | |
|      |       | RFB=2000005963316263  06/06/08  03:09PM ET | |
| 5/09 | 463.00 | PURCHASE    LEGALZOOM.COM    05/06 | |
|      |       | 4828801804835      800-7730888   CA 5026Z200013 | |
| /09 | 59,000.00 | FUNDS TRANSFER (ADVICE 2008060900054056) | |
|      |       | SENT TO  UNITED INVESTMENT/ | |
|      |       | REF=UNITED INVESTMENT CLUB | |
|      |       | OBI= | |
|      |       | RFB=2000006163316263  06/09/08  04:36PM ET | |
| 10 | 1.00 | PURCHASE    APS*PRIVACYMATTERS    06/09 | |
|      |       | 4828801804835      877-993-6264 CT 5026Z210000 | |
| 10 | 1.00 | PURCHASE    APS*ATHOMEREWARDS+    06/09 | |
|      |       | 4828801804835      877-636-6858 CT 5026Z230000 | |

her Withdrawals and Service Fees continued on next page.

CHOVIA BANK, N.A. ,  SOUTHDALE



**WACHOVIA**

Business Cash Manager Checking

19    200027474141 036 130    0 33    SAFEKEPT    Replacement Statement

**Other Withdrawals and Service Fees continued**

| Date | Amount | Description |
|------|--------|-------------|
| 6/24 | 50,000.00 | FUNDS TRANSFER (ADVICE 2008062400040414) SENT TO LAW OFFICES OF GA/ REF=LAW OFFICES OF GABRIELLE ALEXIS OBI= RFB=2000013963316263 . 06/24/08 02:23PM ET   **G** |
| 6/24 | 125,231.00 | FUNDS TRANSFER (ADVICE 2008062400040299) SENT TO U.S. BANK, N.A. /MACT'S REF=MACT'S OBI= RFB=2000013863316263 . 06/24/08 02:21PM ET |
| 6/24 | 200,000.00 | FUNDS TRANSFER (ADVICE 2008062400040123) SENT TO BANK OF AMERICA. /SKY KING AIR EXPR REF=SKY KING AIR EXPRESS OBI= RFB=2000013763316263 . 06/24/08 02:19PM ET |
| 6/25 | 1,800.00 | FUNDS TRANSFER (ADVICE 2008062500019814) SENT TO CITADELLE INVESTM/ REF=CITADELLE INVESTMENT CLUB OBI= RFB=2000014263316263 . 06/25/08 10:04AM ET |
| 6/25 | 7,500.00 | FUNDS TRANSFER (ADVICE 2008062500055472) SENT TO WASHINGTON MUTUAL/DEITRA PASSYELO REF=DEITRA PASSYELO OBI= RFB=2000014463316263 . 06/25/08 03:47PM ET |
| 6/25 | 12,800.00 | FUNDS TRANSFER (ADVICE 2008062500083746) SENT TO WASHINGTON MUTUAL/GHL CAPITAL GROUP REF=GHL CAPITAL GROUP OBI= RFB=2000014363316263 . 06/25/08 03:29PM ET |
| 6/25 | 13,500.00 | FUNDS TRANSFER (ADVICE 2008062500019422) SENT TO AMERIFUND SMART C/ REF=AMERIFUND INVESTMENT CLUB OBI= RFB=2000014163316263 . 06/25/08 10:06AM ET |
| 6/25 | 20,000.00 | FUNDS TRANSFER (ADVICE 2008062500083872) SENT TO BANK OF AMERICA /EARLYIVING REF=EARLYIVING OBI= RFB=2000014563316263 . 06/25/08 04:15PM ET |
| 6/25 | 268,710.00 | FUNDS TRANSFER (ADVICE 2008062500018364) SENT TO UNITED INVESTMENT/ REF=UNITED INVESTMENT CLUB OBI= RFB=2000014063316263 . 06/25/08 10:13AM ET |
| 6/25 | 4.84 | PURCHASE    DUNKIN #332840    06/24 4828801804835    W PALM BCH   FL 5026V230720 |
| 6/25 | 16.32 | PURCHASE    DUNKIN #310127    06/25 4828801804835    GREENACRES   FL 5026V250720 |

Other Withdrawals and Service Fees continued on next page.



Business Cash Manager Checking

04   2000027474141 036 130       0   33     SAFEKEPT      Replacement Statement       003

**Other Withdrawals and Service Fees continued**

| Date | Amount | Description | |
|------|--------|-------------|---|
| 7/07 | 506.79 | PURCHASE     LOUIS VUITTON WAIL      07/03<br>4828801783978      WAILEA      HI 8011V212072 | 200807031228000 |
| 7/07 | 630.20 | PURCHASE     LOUIS VUITTON WAIL      07/03<br>4828801783978      WAILEA      HI 8011V272072 | 200807031228000 |
| 7/07 | 838.54 | PURCHASE     LOUIS VUITTON WAIL      07/03<br>4828801783978      WAILEA      HI 8011V292072 | 200807031228000 |
| Done ✓ 7/07 | 3,600.00 | FUNDS TRANSFER  (ADVICE 2008070700025651)<br>SENT TO  WASHINGTON MUTUAL/REAL WORLD INVESM<br>BNF=REAL WORLD INVESTMENT CLUB   *Payout to 2101s*<br>OBI=<br>RFB=2000017663316263  07/07/08  10:37AM ET | 00008070700025651 |
| 7/07 | 12,165.00 | PURCHASE     LOUIS VUITTON WAIL      07/03<br>4828801783978      WAILEA      HI 8011V232072 | 200807031228000 |
| Done ✓ 7/07 | 19,000.00 | TRANSFR 2000027474170      07/07<br>ONLINE TRANSFR CONFIRMATION # VX110862989 | 200807071641530 |
| 7/08 | 3.44 | PURCHASE     GRAND WAILEA RESOR      07/07<br>4828801783978      WAILEA      HI 8011V290403 | 200807072314000 |
| 7/08 | 64.38 | PURCHASE     GRAND WAILEA RESOR      07/07<br>4828801783978      WAILEA      HI 8011V210403 | 200807072314000 |
| 7/08 | 745.46 | PURCHASE     GRAND WAILEA RESOR      07/07<br>4828801783978      WAILEA      HI 8011V290403 | 200807072314000 |
| Done ✓ 7/08 | 800.00 | FUNDS TRANSFER  (ADVICE 2008070800011937)<br>SENT TO  WASHINGTON MUTUAL/GLOBAL EMPOWERMEN<br>BNF=GLOBAL EMPOWERMENT INVESTMENT CLUB   *2059 payout*<br>OBI=<br>RFB=2000017863316263  07/08/08  08:57AM ET | 000080708011937 |
| 7/08 | 1,890.00 | PURCHASE     GRAND WAILEA RESOR      07/07<br>4828801783978      WAILEA      HI 8011V290403 | 200807072314000 |
| 7/08 | 2,030.95 | PURCHASE     GRAND WAILEA RESOR      07/07<br>4828801783978      WAILEA      HI 8011V210403 | 200807072314000 |
| 7/08 | 2,426.54 | PURCHASE     GRAND WAILEA RESOR      07/07<br>4828801783978      WAILEA      HI 8011V270403 | 200807072314000 |
| 7/08 | 3,912.68 | PURCHASE     GRAND WAILEA RESOR      07/07<br>4828801783978      WAILEA      HI 8011V290403 | 200807072314000 |
| Done ✓ 7/08 | 6,000.00 | FUNDS TRANSFER  (ADVICE 2008070800012390)<br>SENT TO  EAST ENCORD PRIV/...   *Payout to 2014*<br>BNF=EAST ENCORD INVESTMENT/...<br>OBI=<br>RFB=2000018263316263  07/08/08  03:05PM ET | 000080708012390 |
| 7/08 | 10,000.00 | FUNDS TRANSFER  (ADVICE 2008070800044659)<br>SENT TO  LAW OFFICES OF GA/<br>BNF=LAW OFFICES OF GABRIELLE ALEXIS<br>OBI=<br>RFB=2000016463316263  07/08/08  03:01PM ET | 000080708044659 |

H

Other Withdrawals and Service Fees continued on next page

WACHOVIA BANK, N.A. ,   SOUTHDALE                                   page 4 of 7

```
WACHOVIA BANK, N.A.- FL                        REPORTID P3FTS01S   RUN  7-JUL-2008 22:44   PAGE 195,808
FULL TRANSACTION REPORT                                            FOR  3-JUL-2008

<<< TRN: 20080703-0005761S >>>
-----------------------------------------------------------------------------------
 **** MESSAGE ENVELOPE ****                     ( Bank : 003 )

                                             SND DATE: 08/07/03
                                             EXT:
 SRC:HBD CALLER:HUB TRANSACTIONS

 1PT#           AMT:150,000.00               CUR:USD RATE: 1.         TRDR#
 TEST:  DUE:                              TYP:FTR/  FNDS:S CHG:DB:A CD:A COM:N CBL:N

 DBT D/2000027474141/                        CDT D/2000029335699/          ADV:LTR
 DEBIT VAL: 08/07/03   ┌─────┐               CREDIT VAL: 08/07/03
 AMT:150,000.00 CUR:USD│  I  │               AMT:160,000.00 CUR:USD
 DEPT:PA002            └─────┘               MONDESIR & ALEXIS TITLE SERVIC
 CREATIVE CAPITAL CONSORTIUM LLC             1640 W OAKLAND PK BLVD STE 301
 1943 WEST HAMILTON HWY                      FORT LAUDERDALE FL  333111505 33311
 WEST PALM BEACH, FL 33411                   BNF:/            CHG:  BK7
 BNER REF NUM:20000174633316263              MONDESIR ALEXIS TITLE SERVICES
 ORIG:/WBFL2000027474141
 CREATIVE CAPITAL
 8461 LAKE WORTH RD
 STE 170
 GREENACRES, FL 33467


     *** MESSAGE TEXT ***

 DBK003A063000021
 SNDFTR   080703      0000   Y
 AMT150000.000USD0.00000000000
 DEBT2000027474141
 PA002
 CREATIVE CAPITAL
 SRP2000017463316263
 ORG WBFL2000027474141
 CREATIVE CAPITAL
 8461 LAKE WORTH RD
 STE 170
 GREENACRES, FL 33467
 CBK003
 BEN2000029335699
 BNF
 MONDESIR ALEXIS TITLE SERVICES
 CHGBANK
 COMAPPL-ID:HDT


    MESSAGE HISTORY SEQUENCE
 -----------------------------------
 003 is the owning bank. Priority:
      *SYS_MEMO    APPL-ID:HDT
      *REP_INDEX      REF #: 2008070300057615   3-JUL-2008 15:11:15.85
      HBDIENT-LOG     OPRID:   TIME:  3-JUL-2008 15:11:15.85
      Memo: *ASI:6331626520000174:FTHBDNRP
      SYS_MEMO        *CVD:--- DVD:23 PSD:7 SSD:--- DBD:1 CBD:1
```

Page 1
01/11/2009

INDTECH REAL ESTATE SETTLEMENT SYSTEM
RECEIPT/CHECK DETAILED DISBURSEMENT STATEMENT FROM CHECK WRITER
File Number 08-0000C to 08-0000C

12:17 PM

BANK: Wachovia Bank, NA — 2000029335699 — Fort Lauderdale, FL

```
File #        : 08-0000C
Receipt #     :            Date: 07/03/08 Type Code: WC
Received From: Creative Capital Consortium (CCC)
Descriptions : for Expenses
Amount        :                                              150,000.00

                          Total Deposits                     150,000.00
```

```
File #        : 08-0000C
Check #       :    1073 Date: 07/11/08 Type Code: CL
Received From: Bapthol Joseph
Descriptions : Expenses for Corporations
Amount        :                                      3,000.00 ✳
```

```
File #        : 08-0000C
Check #       :    1075 Date: 08/01/08 Type Code: CL
Received From: Law Offices of Gabrielle Alexis, P.A.
Descriptions : Corp. fees
Amount        :                                      1,792.50 ✳
```

```
File #        : 08-0000C
Check #       :    1076 Date: 08/06/08 Type Code: CL
Received From: Law Offices of Gabrielle Alexis, P.A.
Descriptions : August Retainer per George's instructions
Amount        :                                      10,000.00 ✳
```

```
File #        : 08-0000C
Check #       :    1077 Date: 08/20/08 Type Code: CL
Received From: Law Offices of Gabrielle Alexis, P.A.
Descriptions : Expenses
Amount        :                                      275.00 ✳
```

```
File #        : 08-0000C
Check #       :    1084 Date: 09/18/08 Type Code: CL
Received From: Law Offices of Gabrielle Alexis, P.A.
Descriptions : Partnership Agreement
Amount        :                                      15,000.00
```

```
File #        : 08-0000C
Check #       :    1087 Date: 09/30/08 Type Code: CL
Received From: Law Offices of Gabrielle Alexis, P.A.
Descriptions : Expenses
Amount        :                                      550.00 ✳
```

```
File #        : 08-0000C
Check #       :    1089 Date: 10/17/08 Type Code: CL
Received From: Law Offices of Gabrielle Alexis, P.A.
Descriptions : October Retainer
Amount        :                                      10,000.00 ✳
```

```
File #        : 08-0000C
Check #       :            Date: 11/03/08 Type Code: WL
```

 

# GEORGE THEODULE 'S ACCOUNTING

| Date | Deposit Amount | Send To | Withdraw Amount | |
|------|----------------|---------|-----------------|---|
| 11/03/08 | 109,382.50 Transfer of Balance from Title to Trust | Gabrielle Alexis Nov. Retainer | 10,000.00 | J |
| 11/05/08 | | Ullmann 's Enterprise | 4,927.00 | |
| 11/05/08 | | Gabrielle Alexis Partnership Agreement | 50,000.00 | K |
| 11/13/08 | | George Theodule | 34,955.50 | |
| 11/20/08 | | TurnKey Hedge Fund | 9,500.00 | |
| Total | 109,382.50 | | 109,382.50 | |
| Balance | 0.00 | | | |

## Interest On Lawyers Trust Account

01     2000029401714  036  130        0   37

**Electronic Delivery**

LAW OFFICES OF GABRIELLE ALEXIS
IOTA  TRUST  ACCOUNT                              CB
1325  CONGRESS  AVENUE  SUITE  100
BOYNTON  BEACH  FL  33426

---

## Interest On Lawyers Trust Account

**11/01/2008 thru 11/28/2008**

Account number:        2000029401714
Account owner(s):      LAW OFFICES OF GABRIELLE ALEXIS
                       IOTA TRUST ACCOUNT

### Account Summary

| | |
|---|---:|
| Opening balance 11/01 | $2,000.00 |
| Deposits and other credits | 109,382.50 + |
| Interest paid | 2.02 + |
| Other withdrawals and service fees | 108,384.52 - |
| **Closing balance 11/28** | **$3,000.00** |

### Deposits and Other Credits

| Date | Amount | Description |
|---|---|---|
| 11/03 | 109,382.50 | FUNDS TRANSFER  (ADVICE 2008110300062163) RCVD FROM MONDESIR & ALEXIS/ ORG=MONDESIR & ALEXIS TITLES SERVS REF=GEORGE THEODULE OBI=RELEASE OF BALANCE O REF=20001847MONALEXS 11/03/08  03:40PM ET |
| 11/28 | 2.02 | INTEREST FROM 11/01/2008 THROUGH 11/28/2008 |
| **Total** | **$109,384.52** | |

### Interest

| | |
|---|---:|
| Number of days this statement period | 28 |
| Annual percentage yield earned | 0.10% |
| Interest earned this statement period | $2.02 |
| Interest paid this statement period | $2.02 |
| Interest paid this year | $3.49 |

### Other Withdrawals and Service Fees

| Date | Amount | Description | |
|---|---|---|---|
| 11/03 | 5,000.00 | TRNSFR 2000029401688                11/03 ONLINE TRNSFR CONFIRMATION # VY130868615 | * |
| 11/03 | 5,000.00 | TRNSFR 2000029402030                11/03 ONLINE TRNSFR CONFIRMATION # VY130868731 | *   J |
| 11/05 | 4,927.00 | FUNDS TRANSFER  (ADVICE 2008110500055656) SENT TO  COMMERCE BANK, NA/ BNF=ULLMANN ENTERPRISES, INC. OBI=BACKGROUND CHECK FEES FOR REGENCY S RFB=2000004161330729 11/05/08  04:51PM ET | |

*Other Withdrawals and Service Fees continued on next page.*

---

WACHOVIA BANK, N.A. , SOUTH BOYNTON

**Interest On L**~~~~**yyers Trust Account**

WACHOVIA   02   2000029402027   036   130   0   37

## Other Withdrawals and Service Fees

| Date | Amount | Description |
|------|--------|-------------|
| 7/08 | 4,000,000.00 | FUNDS TRANSFER (ADVICE 2008070800041633)<br>SENT TO CHASE MANHATTAN B/<br>BNF=GABRIELLE ALEXIS<br>OBI=FOR THE BENEFIT OF ACCT 05496260<br>RFB=080708150550   07/08/08 03:37PM ET |
| 7/15 | 300,000.00 | FUNDS TRANSFER (ADVICE 2008071500052800)<br>SENT TO MONDESIR & ALEXIS/<br>BNF=MONDESIR & ALEXIS TITLE SERVICES<br>OBI=FOR GEORGE THEODULE'S PURCHASE OF 1<br>RFB=2000000161330729  07/15/08 03:14PM ET |
| 7/31 | 6,303.81 | IOLTA INTEREST TRANSFER |
| 7/31 | 138,808.00 | FUNDS TRANSFER (ADVICE 2008073100009776)<br>SENT TO ARVEST BANK  /<br>BNF=G & R AVIATION<br>OBI=FOR SKY KING ON BEHALF OF GEORGE TH<br>RFB=2000000461330729  07/31/08 07:40AM ET |
| Total | $4,445,111.81 | |

## Daily Balance Summary

| Dates | Amount | Dates | Amount | Dates | Amount |
|-------|--------|-------|--------|-------|--------|
| 7/08 | 7,000,000.00 | 7/15 | 9,700,000.00 | | |
| 7/09 | 10,000,000.00 | 7/31 | 9,563,192.00 | | |



## Interest On Lawyers' Trust Account

**WACHOVIA**  02   2000029402027  036  130   0  37

---

## Other Withdrawals and Service Fees  *continued*

| Date | Amount | Description |
|------|--------|-------------|
| 8/22 | 112,000.00 | FUNDS TRANSFER  (ADVICE 2008082200008036)<br>SENT TO  MONDESIR & ALEXIS/<br>BNF=MONDESIR & ALEXIS TITLE SERVICES<br>OBI=PER GEORGE'S INSTRUCTION FOR THE PU<br>RFB=2000000861330729: 08/22/08  09:34AM ET |
| 8/29 | 2,963.75 | IOLTA INTEREST TRANSFER |
| **Total** | **$7,250,635.75** | |

## Daily Balance Summary

| Dates | Amount | Dates | Amount | Dates | Amount |
|-------|--------|-------|--------|-------|--------|
| 8/01 | 9,477,320.00 | 8/21 | 2,427,320.00 | 8/29 | 2,315,320.00 |
| 8/13 | 2,477,320.00 | 8/22 | 2,315,320.00 | | |

 **Interest On Lawyers Trust Account**

**WACHOVIA** 02    2000029402027  036  130       0  37

## Other Withdrawals and Service Fees

| Date | Amount | Description |
|------|--------|-------------|
| 9/03 | 119,185.33 | FUNDS TRANSFER (ADVICE 2008090300056604) SENT TO CB-DH, LLC    / BNF=CB-DH, LLC OBI=DEVELOPMENT FEES FOR 2 MONTHS FOR R RFB=2000001381330729 03:54PM ET |
| 9/03 | 159,592.67 | FUNDS TRANSFER (ADVICE 2008090300057441) SENT TO SHOWCASE INVESTME/ BNF=SHOWCASE INVESTMENT OBI=CONSULT FEE $100,000 & DEVELOPMT FE RFB=2000001461330729 09/03/08 04:02PM ET |
| 9/11 | 2,417,000.00 | FUNDS TRANSFER (ADVICE 2008091100036732) SENT TO CHASE MANHATTAN B/ BNF=OPTIONS XPRESS, INC OBI=FUNDS FOR GEORGE THEODULE JOINT AC RFB=2000001761330729 09/11/08 01:09PM ET |
| 9/30 | 439.09 | IOLTA INTEREST TRANSFER |
| **Total** | **$2,695,217.09** | |

## Daily Balance Summary

| Dates | Amount | Dates | Amount | Dates | Amount |
|-------|--------|-------|--------|-------|--------|
| 9/03 | 2,315,320.00 | 9/11 | 320.00 | | |
| 9/10 | 2,427,320.00 | 9/30 | 320.00 | | |